## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Atlas Industrial Contractors, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 2:19-cv-2705 |
| | : | |
| In2Gro Technologies, | : | Judge Sarah D. Morrison |
| | : | Magistrate Judge Vascura |
| Defendant. | : | |
| | : | |

## OPINION & ORDER

In this removed diversity action centered upon a contract dispute, Plaintiff Atlas Industrial Contractors, LLC ("Atlas") moves for full summary judgment on its claims against Defendant In2Grow Technologies, LLC ("I2G") as well as on I2G's counterclaims against Atlas. (ECF No. 99). I2G, in turn, moves for summary judgment on Atlas's claims against it. (ECF No. 83.) Additionally, each side moves for sanctions. (ECF Nos. 102, 103.) All motions are fully briefed. (ECF Nos. 90, 98, 100, 101.) After due consideration, the Court **GRANTS** in part and **DENIES** in part Atlas' Motion for Summary Judgment (ECF No. 99), **GRANTS** in part and **DENIES** in part I2G's Motion for Summary Judgment (ECF No. 83), and **DENIES** the motions for sanctions. (ECF Nos. 102, 103.)

1

## I.     BACKGROUND

### A. Parties

Atlas is a Delaware limited liability company with is principal place of business in Columbus, Ohio. I2G is a Michigan limited liability company with a principal place of business in Michigan. Members of each are diverse.

Atlas offers commercial and industrial installation services across the country. (ECF No. 86-4, PageID 1055.) I2G provides "end-to-end design, installation, integration and maintenance security services for large complex high value facilities" anywhere in the world. (ECF Nos. 13, PageID 247 at ¶ 6 and 100-1 at ¶ 4.) I2G has a contract with Amazon Web Services ("AWS") to provide, install, activate, and maintain security systems at AWS's data server facility ("Facility") in Licking County, Ohio. (ECF No. 86-4, PageID 1059.)

### B. Standby Work

Atlas began working on the Facility when it was being built. (ECF No. 86-4, PageID 1060.) I2G became aware of Atlas after I2G later commenced working at the site. I2G asked Atlas to provide a quote to install conduit and pull wire for the security systems I2G was installing at the Facility. *Id*. Before the parties had a contract for that work, Amazon asked I2G to ensure Atlas had employees present at the site at all times to complete any miscellaneous work not covered by individual contracts. *Id*. at 1065-6. This work was referred to as "Standby Work." Standby Work included, but was not limited to, "locksmithing, relocating motion sensors, field research of conduits and electronic components, installation of various items,

and even information gathering." (ECF No. 99, PageID 1551)(citing ECF No. 87-4, PageID 1246-48.)

Atlas performed some Standby Work in March 2018. Atlas submitted a quote totaling $69,999 to I2G that same month. I2G, in turn, issued a purchase order for $69,999 to Atlas. In April 2018, I2G paid $89,999 on the purchase order. (ECF No. 87-1, PageID 1165.)

### C. Master Services Agreement and Non-Standby Work

The parties executed a Master Services Agreement ("MSA") on May 23, 2018, with I2G as the contractor and Atlas the subcontractor. (ECF No. 2-1.) The contract governed all projects I2G engaged in with Atlas. *Id.* at ¶ 1.1. It provided that all work performed and materials supplied by Atlas must be included in written purchase orders. The MSA also established that:

●   I2G would pay Atlas for the satisfactory performance of work and supplies contained within the purchase orders "either (1) 10 days following receipt of payment from [AWS] or (2) Net 30 terms from date of Atlas's invoice date." *Id.* at ¶ ¶ 2.1, 2.2.

●   I2G could withhold payment up to 100% of the amount of any disputed item. *Id.* at ¶ 2.3.

●   I2G had a "reasonable time" to secure payment from AWS for Atlas's work before payment was due. *Id.* at ¶ 2.5.

- Atlas "shall execute a Purchase Order prior to receiving payment for its Work. Execution of a Purchase Order by [I2G] and [Atlas] is a condition precedent to [I2G]'s obligation to make any payment to Atlas." *Id*. at ¶ 3.2.

- Atlas cannot deviate from the scope of work without a prior written change order approved by I2G. *Id*. at ¶ 4.3. I2G would not be responsible for "any extra labor, materials, or equipment furnished without such written change order." *Id*.

- "If any dispute arises between [I2G] and [Atlas] involving performance of the Work or any alleged change in the Work, [Atlas] shall notify [I2G] in the form of a written change order proposal. [Atlas] shall not commence with the work unless [I2G] provides a new or modified purchase order to account for the additional costs." *Id*. ¶ 10.1.

- Any dispute arising out of or related to the MSA shall first be mediated. *Id*. at ¶ 11.1. "Any dispute not resolved by mediation shall be resolved through arbitration . . . ." *Id*. at ¶ 11.2.

- The agreement would be governed by the substantive and procedural laws of Michigan. *Id*. at ¶ 11.4.

- "This AGREEMENT constitutes the entire agreement between the parties and supersedes and integrates all prior or contemporaneous written or oral communications between the parties regarding the subject matter herein." *Id*. at ¶ 13.7.

Work performed under the MSA is referred to as "Non-Standby Work."

### D. Unpaid Invoices

Atlas issued three invoices to I2G for Standby Work in August, October, and December 2018. (ECF Nos. 87-5, PageID 1301-18 and 99, PageID 1554.) These invoices, which totaled $139,609.20, also included sums for other, Non-Standby "work from Atlas not covered by another, specific purchase order." (ECF Nos. 87-4, PageID 1223-24 and 99, PageID 1550-51.) Each was dated after the MSA took effect. I2G did not pay any of the invoices.

Atlas also invoiced I2G for $177,686.50 pursuant to purchase orders for Non-Standby Work. (ECF No. 99, Page ID 1553.) I2G did not pay that sum either. Atlas ceased working at the facility in April 2019. *Id*. at 1554.

### E. Redesign Contract and Lien

That same month, AWS accepted bids for a Perimeter Gate Redesign Project ("Redesign Project") involving rebuilding entrance gates at three Columbus area AWS sites. (ECF No. 100-1, ¶ 22.)  I2G bid $9,006,393 for the three-gate project and estimated its profit to be $3,953,796 if selected. *Id*.

AWS e-mailed I2G twice on June 13, 2019. One stated, "congratulations on winning the [Redesign] project, we are in the process of authorizing funds." (ECF No. 100-1, PageID 1680.) The second stated that purchase orders would be issued in the next few weeks, "at which time [I2G] will be authorized to invoice for 25% for the total contract to start ordering parts and begin mobilization." *Id*. at 1681. I2G did not receive a purchase order for the project. (ECF No. 87-1, PageID 1175.)

5

Atlas initiated the instant suit the same day AWS e-mailed I2G. On June 18, 2019, Atlas filed a mechanic's lien on the property where the Facility is located against I2G for $297,295.70, the total for the unpaid Standby and Non-Standby Work. (ECF No. 99-1, ¶¶ 5-7.) At the end of that month, Matt Swearingen, Atlas's project manager estimator, spoke with non-party Perry Moss of Plugout. (ECF No. 86-4, PageID 1053, 1094, 1096.) Plugout is another company that installs security systems. *Id.* at 1094. Moss was a salesman at Plugout and a former I2G employee. (ECF Nos. 86-4, PageID 1094-95 and 18, PageID 292.) Moss asked Swearingen to provide pricing for installing security systems for one of AWS's properties in Columbus. (ECF No. 86-4, PageID 1095.) Swearingen did so.

AWS asked Swearingen for a copy of the lien on June 26, 2019, which he provided. *Id.* at 1096-97. The next day, AWS informed I2G that the Redesign Project would be re-bid as three separate projects ("Rebid Projects"). (ECF No. 87-1, PageID 1175.) This meant that I2G lost the Redesign Project.

In July 2019, I2G bid for each of the Rebid Projects. Atlas also bid for the Rebid Projects as both a contractor and as a subcontractor for Plugout. I2G won one project for which it expected a profit of $352,235. (ECF No. 100-1, ¶ 26.) Plugout won one bid with Atlas as the subcontractor. (ECF No. 87-4, PageID 1258.)

Atlas executed a release of its lien on December 6, 2019. The release was recorded on December 23, 2019.

### F.  Current Litigation

Atlas asserts claims against I2G for breach of contract, unjust enrichment, declaratory judgment, and for violation of Ohio's Prompt-Payment Act, R.C. 4113.61. (ECF No. 2.) I2G denies all claims and asserts counterclaims for tortious interference with business expectancies, tortious interference with a contract, breach of contract, and civil conspiracy. (ECF Nos. 13, 18.)

## II.  SUMMARY JUDGMENT MOTIONS

### A.  Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also*

*Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

8

### B. Preliminary Matters

Two issues ignored by the parties but addressed by the MSA deserve mention—arbitration and choice of law.

#### 1. Arbitration

As noted, the MSA has several dispute resolution provisions. Paragraph 11.1, titled "Mediation," states "in the event of any dispute arising out of or related to this AGREEMENT, subsequent purchase order or [Atlas's] work, [I2G] and [Atlas] hereby agree to resolve any such dispute first through internal mediation." (ECF No. 2-1, PageID 81, ¶ 11.1.) In turn, Paragraph 11.2, titled "Arbitration," provides that I2G and Atlas "each acknowledge and agree that any dispute not resolved by mediation **shall** be resolved through arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules . . . ." *Id.* at ¶ 11.2 (emphasis added). Hence, arbitration about any dispute related to the MSA is mandatory if mediation fails.

Atlas seeks recovery for work performed at the facility pursuant to the MSA. Thus, the Complaint clearly pertains to a dispute "arising out of or related to the" MSA. Neither side indicates whether mediation took place prior to Atlas's filing of this suit. But mediation did occur thereafter and was unsuccessful. (ECF No. 84.) Hence, the MSA's plain language requires the parties to arbitrate.

Yet, neither side moved to enforce the arbitration provision. While "there is a strong presumption in favor of enforcing arbitration rights," *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 357 (6th Cir. 2003), "an agreement to arbitrate

may be waived by the actions of a party which are completely inconsistent with any reliance thereon." *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973) (per curiam).

The Court determines that Atlas waived the arbitration provision by filing the instant suit and that I2G did the same by failing to move to enforce the section. *See O.J. Distrib., Inc.*, 340 F.3d at 361 (Batchelder, J.)(dissenting)("The obligation on the part of the defendant to demand arbitration arises once the defendant is faced with a properly filed claim."). Furthermore, the MSA contains a waiver provision. It states:

> all remedies contained in this AGREEMENT are
> cumulative and any one remedy is not intended to be in
> lieu of any other legal right or remedy afforded [I2G] for
> any breach or default of this AGREEMENT. [I2G's]
> failure to enforce in a timely manner any of the remedies
> contained in this AGREEMENT shall not act as a waiver
> to enforcement of any such remedies, or any other
> remedies, at a later date.

Under these circumstances, the Court determines that both sides have waived the arbitration provision and consideration of the instant motions is proper.

## 2. Choice of Law

This is a diversity case. As such, "[u]nder the Erie doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)(citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). But the MSA's choice of law provision states that Michigan law, substantive and procedural, will govern any disputes arising out of or related to the MSA. (ECF No. 2-1, PageID 82, ¶ 11.4).

10

The choice-of-law rules of Ohio, as the forum state, govern the determination of whether to enforce the MSA's selection of Michigan law. *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000). Ohio requires the presence of conflict before engaging in any choice of law analysis. *Akro-Plastics v. Drake Indus.*, 685 N.E.2d 246, 248 (11th Dist. 1996). "If the two states would use the same rule of law or would otherwise reach the same result, it is unnecessary to make a choice of law determination because there is no conflict of law." *Mecanique C.N.C., Inc. v. Durr Envtl., Inc.*, 304 F. Supp. 2d 971, 975 (S.D. Ohio 2004)(Marbley, J.). Typically, the party seeking application of the law of a foreign jurisdiction bears the burden of establishing conflict. *Id.* Should it fail to sustain its burden, Ohio law applies. *Gouge v. BAX Global, Inc.*, 252 F. Supp. 2d 509, 521 (N.D. Ohio 2003)(citation omitted).

Again, both parties fail to address this issue. The Court will not analyze against itself. Because: (1) the general rule is that the law of the forum shall apply; (2) both sides utilize Ohio law; and (3) neither side argues for application of Michigan law, the Court determines that the parties have waived the MSA's choice of law provision. Ohio substantive law and federal procedural law will apply to the Court's analysis.

### C. Summary Judgment Analysis

#### 1. Breach of Contract

Each side sues the other for breach of contract, and each side moves for judgment on the other's breach count.

### a. Framework

To recover for breach of contract under Ohio law, a breach plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 10, 771 N.E.2d 874 (10th Dist. 2002)(quotation and citation omitted). Both parties focus on the breach element. "A party breaches a contract if he fails to perform according to the terms of the contract or acts in a manner that is contrary to its provisions." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)(citation omitted).

"A court's primary objective in interpreting a written contract is to ascertain the intent of the parties as expressed in the terms of the agreement." *Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764, 771 (S.D. Ohio 2016)(citation and quotation omitted). "Generally, contracts should be construed in a manner to give effect to the intentions of the parties." *Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 86 Ohio St. 3d 270, 273, 714 N.E.2d 898, 900 (1999). "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St. 3d 321, 322, 74 N.E.2d 271, 272 (1984).

### b. Atlas's Breach of Contract Count

Although Atlas's Complaint seemingly asserts a claim for breach of contract for the Standby Work, Atlas's filings establish that this count is limited to the Non-Standby Work. *See* ECF No. 99, PageID 1567-8. Specifically, Atlas alleges that it

12

performed work after the MSA was executed pursuant to valid purchase orders under the MSA in the total amount of $177,686.50 and that I2G breached the MSA by failing to pay Atlas that sum. (ECF No. 99, PageID 1566.)

I2G concedes that Atlas performed the Non-Standby work. I2G admits that the work was performed pursuant to purchase orders in accordance with the MSA. I2G concedes that it did not pay the invoiced amount. I2G does not contest the sum being sought. Under these facts, I2G's non-payment for the Non-Standby Work certainly equates to a failure perform according to the terms of the MSA.

Regardless, I2G argues its non-performance was excused because Atlas breached the MSA first by issuing invoices for Standby Work performed without purchase orders after the MSA. (ECF No. 83, PageID 926.) "When one party fails to perform [its] duties under the contract, without legal excuse, he has breached the contract, and the duties of the non-breaching party are suspended." *Violante v. Quadland Corp.*, 1997 Ohio App. LEXIS 3672, at *15 (11th Dist. Aug. 15, 1997)(citation omitted). In essence, I2G raises an affirmative defense of prior material breach of contract in response to Atlas's breach of contract count. (ECF No. 13, PageID 245, ¶ 2.) *See also Olentangy Condo. Ass'n v. Lusk*, 10th Dist. Franklin No. 09AP-568, 2010-Ohio-1023, ¶ 29 (describing appellant's defense of breach of contract as an affirmative defense).

Affirmative defenses "represent a substantive or independent matter which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the [plaintiff] are true . . . ." *State v. Poole*, 33 Ohio St. 2d 18, 19, 294

13

N.E.2d 888, 889 (1973). "[T]he burden of proving an affirmative defense rests with the party raising the defense." *Nationstar Mortg., LLC v. Mielcarek*, 9th Dist. Lorain No. 15CA10748, 2016-Ohio-60, ¶ 11. So, I2G has the burden of proving that Atlas breached the MSA by billing for the Standby Work performed after the MSA's execution.

Atlas's alleged breach must be material to excuse I2G's non-performance.

> A failure to perform a promise that is nominal, trifling, technical, or slight does not excuse performance under the contract by the nonbreaching party. In other words, [a] breach of a portion of the terms of a contract does not discharge the obligations of the parties to the contract, unless performance of those terms is essential to the purpose of the agreement.

*H&H Glass, Inc. v. Empire Bldg. Co., LLC*, 1st Dist. Hamilton Nos. C-150059, C-150227, 2016-Ohio-3029, ¶ 7 (internal quotations and citations omitted). "Whether a party's failure was 'essential to the purpose' of the agreement-meaning whether a breach was 'material'—is a question of fact." *Id.* (quoting *O'Brien v. Ohio State Univ.*, 10th Dist. Franklin No. 06AP-946, 2007-Ohio-4833, ¶11). This involves "an examination of the parties' injuries, whether and how much the injured parties would or could have been compensated, and whether the parties acted in good faith." *O'Brien*, 2007-Ohio-4833, ¶11.

Despite having the burden of proof to show that Atlas's post-MSA billing for Standby Work was a material breach of the MSA, I2G fails to discuss this requirement. Simply calling Atlas's conduct a "material breach" does not make it so. The Court will not perform I2G's job. Because I2G fails to fulfill its burden of proof,

14

its affirmative defense is insufficient to excuse I2G's admitted non-payment for the Non-Standby invoices and its motion for summary judgment on this count is **DENIED**. (ECF No. 18.) Furthermore, Atlas has established that there is no genuine dispute of material fact as to all material elements of its breach claim. So, the Court **GRANTS** Atlas summary judgment on its breach of contract claim for Non-Standby Work in the amount of $177,686.50. (ECF No. 99, PageID 1566.)

Perhaps anticipating this result, I2G says that Atlas failed to mitigate its damages by refusing "to accept payment for non-Standby PO invoices prior to initiating this action." (ECF No. 83, PageID 921.) It makes no argument and provides no evidence in support of this statement. Rule 408 provides "[e]vidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim . . . : (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; . . . ." I2G's cited deposition testimony in support of its failure to mitigate contention is less than clear as to who made the offer, to whom the offer was made, when the offer was made, and whether the offer is an inadmissible offer to compromise under Fed. R. Evid. 408. (ECF No. 86-2, PageID 1004.) The cites to not establish a failure to mitigate damages. For this reason, the Court finds I2G's failure to mitigate argument unavailing.

### c.  I2G's Breach of Contract Counterclaim

I2G asserts that Atlas breached the MSA by issuing the invoices for the Standby Work and by not returning I2G's $20,000 overpayment on the original $69,999 Standby Work invoice. (ECF No. 13, PageID 252, ¶¶ 47-51.) Atlas argues no breach occurred such that judgment in its favor on this count is proper. (ECF Nos. 99, PageID 1565.)

I2G, as the party asserting breach, must prove that Atlas's post-MSA issuance of the Standby Work invoices was a material breach of the MSA. *H&H Glass, Inc.*, 2016-Ohio-3029, ¶ 7 (internal quotations and citations omitted). I2G makes no effort to satisfy this burden. Moreover, I2G fails to develop its overpayment argument.

The Court will not fill those voids. I2G fails to sustain its Fed. R. Civ. P. 56 burden in response to Atlas's properly argued Motion for Summary Judgment on I2G's breach of contract counterclaim. Accordingly, the Court **GRANTS** Atlas's motion for judgment on this count. (ECF No. 99.) This holding negates the need to address Atlas's alternative double-recovery argument. *Id*. at 1558-59.

### 2.  Prompt-Payment Act

Both sides move for judgment on Atlas's Prompt-Payment Act claim. For this count, Atlas asserts that I2G's failure to pay for the Non-Standby work entitles Atlas to damages available under R.C. 4113.61. (ECF Nos. 2, PageID 68, ¶¶ 36-40 and 90, PageID 1324 and 99, PageID 1566.) I2G counters that Atlas's inability to establish that AWS paid I2G for the specific Non-Standby Work in focus and Atlas's

16

refusal to accept payment from I2G for the Non-Standby Work warrant judgment in I2G's favor for this count. (ECF Nos. 83, PageID 915, 928 and 98, PageID 1525 and 100, PageID 1633.)

The Prompt-Payment Act "essentially requires a contractor to timely pay its subcontractor or materialmen undisputed amounts under a contract and sets forth penalties for noncompliance." *Masiongale Elec.-Mech., Inc. v. Constr. One, Inc.*, 102 Ohio St. 3d 1, 3, 2004-Ohio-1748, ¶ 10. Revised Code § 4113.61(A)(1) provides:

> (A) (1) If a subcontractor or material supplier submits an application or request for payment or an invoice for materials to a contractor in sufficient time to allow the contractor to include the application, request, or invoice in the contractor's own pay request submitted to an owner, the contractor, within ten calendar days after receipt of payment from the owner for improvements to property, shall pay to the:

> (a) Subcontractor, an amount that is equal to the percentage of completion of the subcontractor's contract allowed by the owner for the amount of labor or work performed;

> (b) Material supplier, an amount that is equal to all or that portion of the invoice for materials which represents the materials furnished by the material supplier.

> The contractor may reduce the amount paid by any retainage provision contained in the contract, invoice, or purchase order between the contractor and the subcontractor or material supplier, and may withhold amounts that may be necessary to resolve disputed liens or claims involving the work or labor performed or material furnished by the subcontractor or material supplier.

> If the contractor fails to comply with division (A)(1) of this section, the contractor shall pay the subcontractor or material supplier, in addition to the payment due,

17

> interest in the amount of eighteen per cent per annum of
> the payment due, beginning on the eleventh day following
> the receipt of payment from the owner and ending on the
> date of full payment of the payment due plus interest to
> the subcontractor or material supplier.

To summarize, the Prompt-Payment Act establishes that "if a subcontractor makes a timely request for payment, a contractor must pay the subcontractor in proportion to the work completed within ten calendar days of receiving payment from the owner." *Masiongale Elec.-Mech., Inc.*, 102 Ohio St. 3d at 4. The Act enables a contractor to withhold amounts disputed about "work or labor performed or material furnished by the subcontractor." R.C. § 4113.61(A).

"A subcontractor also may file a civil action to recover the amount due and the statutory interest." *Masiongale Elec.-Mech., Inc.* 102 Ohio St. 3d at 4 (citing R.C. 4113.61(B)(1)). If the contractor violates the Act, the subcontractor is entitled to eighteen percent interest per annum plus reasonable attorney's fees and court costs incurred in pursuing the claim.  R.C. § § 4113.61(B)(1) and (B)(3).

There is no dispute about the work performed or materials provided by Atlas for the Non-Standby Work. There is no dispute about the total due for those services. Instead, I2G argues that, under the Prompt Pay Act, it does not have to pay Atlas for the Non-Standby Work because AWS has not paid I2G for the Non-Standby Work. Atlas does not contest I2G's interpretation of the statute to the effect that AWS must pay I2G for the Non-Standby Work before I2G becomes obligated to pay Atlas. So the issue is whether Atlas has proven that AWS paid I2G for the Non-Standby Work.

18

Atlas points to invoices I2G sent to AWS that are marked "paid" as proof that AWS paid I2G for the Non-Standby Work. (ECF No. 97.) Atlas states those invoices total $1,811,961.45 and intones that because that sum is greater than the undisputed Non-Standby Work total of $177,686.50, AWS has paid I2G for the Non-Standby Work. (ECF No. 90, PageID 1321.) However, the invoices are generic in nature and do not specify that they are for the Non-Standby Work. Additionally, some of the invoices pre-date the MSA. Moreover, Matthew Van Haaren, I2G's President, testified that AWS has not paid I2G for all of the Non-Standby Work. (ECF No. 86-2, PageID 997, 1003.) Atlas does not respond to any of these points or provide any evidence as to what Non-Standby Work was paid to I2G.

Consequently, Atlas fails to satisfy its Rule 56 burden as to whether AWS paid I2G for the Non-Standby Work. I2G's properly supported Motion for Summary Judgment (ECF No. 83) on Atlas's Prompt-Payment Act claim is **GRANTED** and Atlas's Motion for Summary Judgment (ECF No. 99) on the same claim is **DENIED**. Discussion of I2G's additional argument that this claim is subject to judgment on equitable grounds is unnecessary.

### 3. Unjust Enrichment

Atlas's unjust enrichment argument is limited to the Standby Work. (ECF Nos. 90, PageID 1320 and 99, PageID 1568.) Both parties seek judgment on this count.

Atlas must prove three elements to prevail on this claim: "(1) [a] benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the

benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298 (1984). Recovery under this theory is precluded, however, if an express contract between the parties covering the same subject exists. *Ruggles v. Bulkmatic Transp. Co.*, No. C2-03-617, 2004 U.S. Dist. LEXIS 30588, at *15 (S.D. Ohio June 23, 2004)(Graham, J.)(citing cases). It is under that exception that I2G seeks judgment.

The parties dispute whether the MSA covers the Standby Work. Arguing in the affirmative is I2G. Pursuing the negative, Atlas counters that the parties had no written contract covering the Standby Work. (ECF No. 99, PageID 1568.)

The Court concludes that the MSA covers the Standby Work. The Standby Work pertained to work at the Facility. The MSA states that it serves "as a master agreement for *all* projects for which [I2G] may engage [Atlas]." (ECF No. 2-1, PageID 72, ¶ 1.1)(emphasis added).) The contract provides "the parties agree that this AGREEMENT, without further acknowledgement, signature, or agreement will govern *all* projects for [sic] unless a separate project specific contract is issued by [I2G]." *Id*. Importantly, the MSA includes an integration clause. That clause pertinently provides:

> This AGREEMENT constitutes the entire agreement between the parties and *supersedes and integrates all prior or contemporaneous written or oral communications between the parties regarding the subject matter herein*. Any additions, amendments, modifications, deletions, additions or changes to this AGREEMENT shall be made in writing and shall not be binding unless the same are signed by a duly authorized representative of each party.

20

*Id.* ¶ 13.7 (emphasis added). From this, it is clear that the MSA governs the Standby Work performed after the MSA's execution. Atlas concedes as much by not addressing the integration clause.

Because the MSA covers the post-MSA Standby Work, Atlas's unjust enrichment claim fails under *Ruggles*. The Court **GRANTS** I2G's Motion for Summary Judgment (ECF No. 83) on this count and **DENIES** Atlas's motion (ECF No. 99) on this count.

### 4. Declaratory Judgment

Atlas seeks a declaratory judgment that "Atlas and [I2G] entered into a binding agreement for the Standby Work and [I2G] breached that agreement by failing to pay Atlas." (ECF No. 99, PageID 1568.) I2G moves for judgment on this count, but Atlas fails to respond or to even address the claim in sufficient detail anywhere in its briefings.

"'When a plaintiff asserts a claim in a complaint but then fails to delineate that claim in [its] brief in opposition to summary judgment, that claim is deemed abandoned.'" *Chic Promotions, Inc. v. Jewelers Mut. Ins. Co.*, No. 1:07cv417, 2009 U.S. Dist. LEXIS 87930, at *5-6 (S.D. Ohio Sep. 24, 2009)(Barrett, J.)(quoting *E.E.O.C. v. Home Depot U.S.A., Inc.*, No. 4:07CV0143, 2009 U.S. Dist. LEXIS 11596, 2009 WL 395835, *17 (N.D. Ohio Feb. 17, 2009)). Consequently, I2G's Motion for Summary Judgment on Atlas's declaratory judgment count is **GRANTED**. (ECF No. 83.)

21

### 5. Remaining Counterclaims

I2G additionally asserts counterclaims for tortious interference with contract, "tortious interference with business expectancies," and civil conspiracy. (ECF No. 18, PageID 298-300.) Atlas seeks judgment on each. (ECF No. 99.)

### a. Tortious Interference

"Courts frequently use common language when discussing what are actually two distinct claims, tortious interference with business relationships and tortious interference with contract rights." *Franklin Tractor Sales v. New Holland N. Am.*, 106 F. App'x 342, 344 n.1 (6th Cir. 2004). "They differ only in that the former tort does not require proof of a contractual relationship." *Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999).

### i. Tortious Interference with Contract

I2G alleges that Atlas tortiously interfered with I2G's Redesign Contract with AWS by (1) filing the lien and (2) e-mailing AWS after the lien was filed to ask if AWS had paid I2G for Atlas's Non-Standby work. (ECF No. 100, PageID 1622-23.) Atlas asserts judgment in its favor is proper on this count because I2G never had a contract with AWS for the Redesign work. (ECF No. 99, PageID 1563.)

Tortious interference with a contract requires proof of the following elements: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification or privilege; and (5) resulting damages. *See Fred Siegel Co. v. Arter & Hadden*, 85 Ohio St. 3d 171, 171-72, 707 N.E.2d 853, 855 (1999); *Kenty v.*

*Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 416, 650 N.E. 2d 863, 864 (1995). Here, the dispute centers upon the existence of a contract aspect.

Atlas maintains that I2G did not have a contract for the Redesign work because AWS's June 2019 e-mails to I2G about the Redesign work "lack[] sufficient terms to constitute an enforceable contract" and because AWS never sent, and I2G never received, a purchase order for the Redesign Contract. (ECF No. 99, PageID 1563.) Hence, according to Atlas, because the alleged Redesign Contract lacks essential terms, I2G cannot establish the first element of its claim for tortious interference with a contract. *Id.*

I2G responds that its course of dealing with Amazon included e-mail notifications from AWS when I2G won project bids for AWS's projects. Van Haaren describes how AWS notified I2G of bids awarded to I2G as follows:

> a. AWS issues a Request for Proposal (RFP) and invites companies to bid on a particular project.
> b. I2G submits a bid on any RFP that falls into its business scope.
> c. If I2G wins the bid, Amazon issues an e-mail notifying I2G of the winning bid. This serves as AWS' authorization for work.
> d. A few days to two week later, AWS issues a PO.
> e. Prior to the issuance of the formal PO, I2G begins mobilizing in order to begin working promptly when the PO is formally issued.
> f. I2G submits invoices to AWS as work is completed.

(ECF No. 100-1, PageID 1638, ¶ 11.)

I2G's response misconstrues Atlas's argument. Atlas does not contest acceptance. Instead, Atlas takes issue with the essential elements of the purported contract being missing. Its approach is successful. Acceptance is but one element of

contract formation; I2G's failure to establish the others is fatal to its claim. "To prove the existence of a contract, a party must establish the essential elements of a contract: an offer, an acceptance, a meeting of the minds, an exchange of consideration, and certainty as to the essential terms of the contract." *Nilavar v. Osborn*, 127 Ohio App. 3d 1, 11, 711 N.E.2d 726 (1998). "In order to declare the existence of a contract, both parties to the contract must consent to its terms * * *; there must be a meeting of the minds of both parties * * *; and the contract must be definite and certain." *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St. 3d 366, 369, 575 N.E.2d 134 (1991).

Hence, I2G fails to prove, at a minimum, any exchange of consideration or certainty as to the essential terms of any contract with AWS for the Redesign work and the Court **GRANTS** Atlas's Motion for Summary Judgment on I2G's tortious interference with contract counterclaim. (ECF No. 99.)

### ii. Tortious Interference with a Business Relationship

I2G properly re-frames its tortious interference with a business expectancy counterclaim as one for tortious interference with a business relationship in its opposition to Atlas's Motion for Summary Judgment. (ECF No. 100, PageID 1624.) I2G argues that Atlas tortiously interfered with I2G's relationship with Amazon by filing the lien and by inquiring with Amazon about payment for Atlas's Non-Standby work. *Id.*, PageID 1622-23. Atlas seeks judgment on this claim.

Elements for this count mimic those of tortious interference with contract, but this tort "occurs when the result of the improper interference is not a breach of

contract, but the refusal of a third party to enter into or continue a business relationship with the plaintiff." *Franklin Tractor Sales v. New Holland N. Am.*, 106 F. App'x 342, 344 n.1 (6th Cir. 2004)(citing *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 14, 651 N.E.2d 1283, 1294 (1995)).

"'A tortious interference action . . . requires a showing that [the defendant's] actions induced or caused a third party to discontinue a business relationship with [the plaintiff].'" *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010)(quoting *Smith v. Ameriflora 1992, Inc.*, 96 Ohio App. 3d 179, 644 N.E.2d 1038, 1044 (Ohio Ct. App. 10th Dist. 1994)). As Atlas correctly contends, the Rebid Contract happened after the lien was filed and the e-mail was sent. (ECF No. 100, PageID 1625.) I2G admits that it did get one of the Rebid Contracts and that its business relationship with AWS continues through other projects. (ECF No. 87-1, Page ID 1177.) Thus, Atlas did not improperly interfere with I2G's business relationship by filing the lien or by corresponding with AWS about payment for Atlas's services. Atlas's Motion for Summary Judgment on I2G's tortious interference with business relationship counterclaim is **GRANTED**. (ECF No. 99.)

### b. Civil Conspiracy

Lastly, I2G asserts that Atlas engaged in a civil conspiracy with non-parties Plugout and Moss to harm I2G's business relationships with AWS. (ECF No. 18, PageID 300, ¶ 78.) Atlas argues this counterclaim is subject to judgment because

I2G fails to prove that Atlas committed an underlying unlawful act. (ECF No. 99, PageID 1564-65.)

"An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475, 700 N.E.2d 859, 868 (1998). I2G predicates this counterclaim on Atlas's alleged tortious interference with I2G's business relationship with AWS and on Atlas's alleged interference with I2G's purported Redesign Contract with AWS. (ECF Nos. 18, PageID 300, ¶ 78 and 100, PageID 1629.) Because the Court grants summary judgment in favor of Atlas on both of I2G's tortious interference claims, I2G's civil conspiracy claim necessarily fails. Atlas's Motion for Summary Judgment on I2G's civil conspiracy claim is **GRANTED**. (ECF No. 99.)

## III. MOTIONS FOR SANCTIONS

The final dispute before the Court involves each party's request for sanctions against the other. (ECF Nos. 102, 103.) Both requests are denied.

### A. Atlas's Motion for Sanctions

Atlas seeks an order of sanctions against I2G, its counsel, and counsel's law firm pursuant to 28 U.S.C. § 1927 and Fed. R. Civ. P. 11(b). (ECF No. 102, PageID 1800.) Atlas also wants its attorney's fees, costs and expenses "incurred in responding to the [sic] and defending against the Counterclaim and Amended Counterclaim," as well any other relief that the Court deems just. *Id.*, PageID 1813.

Section 1927 states:

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof

26

who so multiplies the proceedings in any case
unreasonably and vexatiously may be required by the
court to satisfy personally the excess costs, expenses, and
attorneys' fees reasonably incurred because of such
conduct.

28 U.S.C. § 1927. Rule 11(b) declares:

(b) Representations to the Court. By presenting to the
court a pleading, written motion, or other paper—whether
by signing, filing, submitting, or later advocating it—an
attorney or unrepresented party certifies that to the best
of the person's knowledge, information, and belief, formed
after an inquiry reasonable under the circumstances:
(1) it is not being presented for any improper purpose,
such as to harass, cause unnecessary delay, or needlessly
increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are
warranted by existing law or by a nonfrivolous argument
for extending, modifying, or reversing existing law or for
establishing new law;
(3) the factual contentions have evidentiary support or, if
specifically so identified, will likely have evidentiary
support after a reasonable opportunity for further
investigation or discovery; and
(4) the denials of factual contentions are warranted on the
evidence or, if specifically so identified, are reasonably
based on belief or a lack of information.

Atlas focuses on Rule 11. According to the Sixth Circuit, Rule 11 sanctions are

proper if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not

well grounded in fact, (2) not warranted by existing law or a good faith argument for

the extension, modification or reversal of existing law, or (3) interposed for any

improper purpose such as harassment or delay." *Herron v. Jupiter Transp. Co.*, 858

F.2d 332, 335 (6th Cir. 1988)(quotation and citation omitted). "Rule 11 motions are

measured against an objective standard of reasonableness under the

circumstances." *Gibson v. Solideal USA, Inc.*, 489 F. App'x 24, 29 (6th Cir. 2012)(quotation and citation omitted).

Atlas argues that I2G violated Rule 11(b) by asserting its "meritless" counterclaims and by seeking recovery for same despite having already recovered a judgment in another lawsuit "for the exact same harm [I2G] claims Atlas caused by filing" the lien. (ECF No. 102, PageID 1801.) Sanctions under Rule11(c) are therefore warranted, Atlas continues.

Atlas's present contentions are nothing more than a repeat of its arguments supporting its own Motion for Summary Judgment and opposing I2G's Motion for Summary Judgment. Having conducted a reasonable inquiry of those contentions, the Court determines that none of the *Herron* grounds for assessing sanctions are present. I2G's pursuing its counterclaims is not so objectively unreasonable as to require a sanctions award here. Atlas's Motion for Sanctions (ECF No. 102) is **DENIED**.

### B. I2G's Request for Sanctions

I2G argues that Atlas's Motion for Sanctions is baseless such that the Court should award I2G its attorney's fees and expenses in opposing it. (ECF No. 103.) Rule 11 requires that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed R. Civ. P. 11(c)(2). I2G pursues sanctions via its opposition, not a motion. Accordingly, I2G does not meet the procedural requirements that justify consideration of its request. *See Wayne Watson Enters., LLC v. City of Cambridge*,

28

No. 2:15-CV-02679, 2018 U.S. Dist. LEXIS 54785, at *8-9 (S.D. Ohio Mar. 30, 2018)(Marbley, J.). I2G's request for sanctions is **DENIED**. (ECF No. 103.)

## IV.  CONCLUSION

Atlas's Motion for Summary Judgment (ECF No. 99) is **GRANTED** in part and **DENIED** in part.

Judgment shall be entered in Atlas's favor for its breach of contract claim for the Non-Standby Work in the amount of $177,686.50.

Judgment shall be entered in Atlas's favor for all of I2G's counterclaims.

I2G's Motion for Summary Judgment (ECF No. 83) is **GRANTED** in part and **DENIED** in part.

Judgment shall be entered in favor of I2G on Atlas's Prompt-Payment Act, unjust enrichment, and declaratory judgment claims.

Atlas's Motion for Sanctions (ECF No. 102) is **DENIED**.

I2G's request for sanctions (ECF No. 103) is **DENIED**.

The Clerk shall enter Judgment accordingly and shall terminate this case from the Court's docket.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**